IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TERESA WARD COOPER,                        §
                                           §
                       Plaintiff,          §
                                           §   Civil Action No. 3:11-CV-2607-D
VS.                                        §
                                           §
DALLAS POLICE ASSOCIATION,                 §
                                           §
                       Defendant.          §

MEMORANDUM OPINION
AND ORDER

Plaintiff Teresa Cooper ("Cooper")—who was terminated as a police officer with the

Dallas Police Department ("DPD") in 2005—filed this *pro se* lawsuit in 2011 against

defendant Dallas Police Association ("DPA"), alleging that DPA violated Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, by refusing on the basis

of her sex and as an act of retaliation to pay her legal fees when she sought reinstatement as

a police officer.  DPA moves for summary judgment, contending that Cooper's lawsuit is

time-barred, or, alternatively, that she cannot recover on the merits.  For the reasons that

follow, the court grants DPA's motion and dismisses this action by judgment filed today.

I

Cooper is a former DPD police officer.[1]  DPA is a labor organization that represents

---

[1]In deciding this motion, the court views the evidence in the light most favorable to
Cooper as the summary judgment nonmovant and draws all reasonable inferences in her
favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex.
2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d
698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

DPD police officers in employment- and benefit-related legal matters.   Under DPA's *Guidelines for Legal Assistance*, to be eligible for assistance, the member must be in good standing at the time of the request for legal assistance, and any obligation of DPA to pay for legal assistance ceases if, during the course of the investigation or legal action that is the basis for payment of legal costs, the member ceases to be a member in good standing for any reason, including the failure to pay required dues.[2]

Cooper was first terminated from her employment with DPD in 2003, and she appealed her termination.   At that time, she was a member of DPA, and DPA paid her legal fees.   The appeal culminated in a February 2004 decision by an administrative law judge ("ALJ"), who found that her termination was procedurally defective and ordered her reinstated, but without back pay or benefits.   The ALJ's decision was subject to certain conditions, including that Cooper complete a fitness-for-duty evaluation.

Neither party explains what happened in the interim,[3] but the instant lawsuit deals with Cooper's second termination from DPD.   After the ALJ ordered her reinstated in 2004, Cooper did not return to work.   On August 30, 2005 she was terminated a second time.   In

---

[2]Cooper objects to the introduction of DPA's Constitution and By-Laws on the ground that they do not satisfy the requirements of Fed. R. Evid. 803(6).  The objection is overruled as moot because DPA has not offered the documents as business records under Rule 803(6).

[3]Cooper has filed several lawsuits against, *inter alia*, DPA and the City of Dallas.  *See, e.g., Cooper v. City of Dallas, Tex.*, 2008 WL 3380554, at *2-3 (N.D. Tex. Aug. 11, 2008) (Godbey, J.) (adopting magistrate judge recommendation) (describing three prior lawsuits filed by Cooper), *aff'd*, 402 Fed. Appx. 891 (5th Cir. 2010); *Cooper v. Dall. Police Ass'n*, No. 3:05-CV-2206-N, Order 1-2 (N.D. Tex. July 6, 2007) (Godbey, J.), *aff'd*, 278 Fed. Appx. 318 (5th Cir. 2008).

his letter explaining the grounds for termination, the Chief of Police cited violations of Chapter IV, §§ 4.5-4.6 of the DPD Code of Conduct, and §§ 34-36 of the City of Dallas Personnel Rules.  In particular, the letter explained that Cooper had been terminated because she had been disrespectful to a supervisor, failed to attend two scheduled fitness-for-duty evaluations, caused an incomplete fitness-for-duty evaluation by altering an informed consent form that she signed, and failed to report to the Internal Affairs Division on three occasions. Cooper appealed her termination, but this time, DPA did not pay her legal expenses in connection with the appeal.

In the instant lawsuit, Cooper alleges that DPA's failure to pay her legal expenses in connection with the appeal of her August 2005 termination was unlawful.  At the time of her 2005 termination, Cooper was engaged in ongoing litigation against the City of Dallas. During her preparation for a meeting with a city manager that was scheduled to occur in late January 2009, Cooper learned that DPA had not paid the attorney who had represented her in the appeal of her August 2005 termination.  Cooper does not identify the precise date on which she learned this information, but she avers that on December 7, 2009 she sent a letter to DPA demanding an explanation for why it had not paid her legal expenses.  On December 23, 2009 she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[4]

_____

[4]In her response, Cooper asserts that she "filed a charge of discrimination" on December 23, 2009, without specifying the agency to which she filed the charge, and she cites her declaration.  *See* P. Resp. 6.  In her declaration, Cooper avers that "on December 23, 2009, I filed a charge of discrimination that was received by the Texas Workforce

Cooper subsequently filed this lawsuit on October 3, 2011.  She brings claims of sex discrimination and retaliation under Title VII, alleging that DPA's failure to pay her legal expenses in connection with the appeal of her August 2005 termination was discriminatory. Cooper is a white female who provided testimony in the investigation of a fellow police officer's charge of racial discrimination against DPA.  That investigation eventually led to a lawsuit filed in 2004, during which DPA received the plaintiff's Fed. R. Civ. P. 26 disclosures.  In the disclosures, Cooper was listed as someone who might have discoverable information about the plaintiff's having filed discrimination lawsuits against DPA and DPD.[5] Construing Cooper's pleadings liberally based on her *pro se* status,[6] her theories of recovery are that DPA retaliated against her by refusing to pay her legal expenses because DPA learned that she was someone with discoverable information in the other lawsuit, or because Cooper had previously filed a lawsuit against DPA that related to its refusal to provide her

_____

Commission on December 29, 2009."  P. App. 9.  DPA asserts that "Cooper filed her charge of discrimination with the EEOC on December 31, 2009."  D. Br. 2.  It presents an affidavit from DPA's records secretary in which the secretary avers that Cooper "filed her charge of discrimination with the EEOC on December 31, 2009."  D. App. 2.  Neither party cites to the charge at issue here, and DPA does not address the apparent discrepancies between Cooper's assertion and DPA's assertion as to the agency that received the charge and the date on which the charge was filed.  Viewing the evidence in the light most favorable to Cooper and drawing all reasonable inferences in her favor, the court assumes that Cooper filed the charge with the EEOC on December 23, 2009.

[5]On the Rule 26 disclosures, Cooper is listed as "Theresa Ward."  Her first name appears to be misspelled in the document.

[6]*See, e.g., Fletcher v. Shulman*, 2014 WL 222990, at *4 (N.D. Tex. Jan. 21, 2014) (Fitzwater, C.J.).

- 4 -

legal assistance on a prior occasion.[7]

DPA moves for summary judgment on Cooper's claims of sex discrimination and retaliation, contending that both claims are time-barred, or, alternatively, that Cooper has failed to establish a prima facie case of discrimination and has failed to rebut DPA's legitimate, nondiscriminatory reason for its adverse employment action as to both claims.[8]

---

[7]In the prior lawsuit, Cooper had requested that DPA pay her legal expenses in connection with a civil lawsuit she intended to file against DPD. Under DPA's *Guidelines for Legal Assistance*, DPA automatically provides legal representation to members in good standing for administrative appeals of disciplinary actions, administrative investigations conducted by DPD, and certain criminal matters. *See Cooper v. Dall. Police Ass'n*, No. 3:05-2206-N, Order at 1-2. DPA's Board of Directors must authorize funding for all other legal matters, including an individual's lawsuit against DPD, and these funding decisions are within the discretion of the Board of Directors. *Id.* at 2. Cooper requested $5,000 in legal assistance for her lawsuit against DPD, but the Board of Directors only authorized $1,800, citing as reasons for the limited authorization its concerns regarding the overall increase in legal expenses and a growing budget deficit. *Id.* Cooper then filed suit against DPA, asserting claims for discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and retaliation under Title VII. *Id.* The court granted summary judgment in favor of DPA, holding that Cooper failed to establish a prima facie case of discrimination under the ADA, *see id.* at 4-6, and that she failed to create a genuine issue of material fact as to pretext regarding her retaliation claim, *see id.* at 6-7.

[8]Cooper objects to DPA's motion on two grounds related to alleged non-compliance with the local civil rules, such as an alleged failure to comply with N.D. Tex. Civ. R. 56.3(a)(1) (failure to state concisely the elements of each claim as to which summary judgment is sought) and 56.6(b)(3) (failure to number sequentially each page in the appendix). These objections are denied because DPA complied with both rules.

Cooper also raises a number of "objections" that are actually counter-arguments to arguments made by DPA in its opening brief. For example, Cooper "objects to Defendant's legal conclusion of the [meaning of] 'duly appointed,'" P. Resp. 2, and she "objects to Defendant's misrepresentation of her Response to Defendant's Request for Admission No. 19," *id.* at 3. Recognizing that these so-called objections are counter-arguments rather than evidentiary objections, the court considers them as such and overrules the objections.

Cooper opposes the motion.[9]

## II

Because Cooper will bear the burden of proof on her claims for sex discrimination and retaliation, DPA can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the claim in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once DPA does so, Cooper must go beyond her pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Cooper's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Cooper's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if Cooper fails to meet this burden. *Little*, 37 F.3d at 1076.

## III

DPA moves for summary judgment on both of Cooper's claims on the ground that they are time-barred. Cooper responds that the limitations period should be equitably tolled because she did not discover that DPA failed to pay her attorney's fees until December 2009,

---

[9]Cooper moves for leave to file a surreply. Because the court has considered Cooper's surreply and nothing in it changes the court's decision to grant summary judgment in DPA's favor, the court grants the motion for leave to file surreply and deems the surreply attached to the motion to be filed.

and she filed her charge with the EEOC on December 31, 2009, within the relevant limitations period.

A

In deferral states such as Texas,[10] an aggrieved party must file an EEOC charge within 300 days after the alleged unlawful practice occurred. *See* 42 U.S.C. § 2000e-5(e); *see also Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 554-55 (5th Cir. 1987). The 300-day filing period is not jurisdictional, but rather is more akin to and operates as a limitations period. *E.g., Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988); *Pruet Prod. Co. v. Ayles*, 784 F.2d 1275, 1279 (5th Cir. 1986). The period commences on the date the alleged unlawful practice occurred. *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)); *Chapman v. Homco, Inc.*, 886 F.2d 756, 758 (5th Cir. 1989).

"In determining when a limitations period accrues in a discrimination case, the 'proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful.'" *Selby v. Revlon Consumer Prods. Corp.*, 1998 WL 101903, at *2 (N.D. Tex. Feb. 26, 1998) (Fitzwater, J.) (quoting *Del. State Coll.*, 449 U.S. at 258). "To decide when the [defendant] notified the [plaintiff], the court uses an objective standard that 'focus[es] upon when the [plaintiff] knew, or reasonably should have

---

[10]A deferral state is one in which (1) a state law prohibiting discrimination in employment is in effect and (2) a state authority has been set up to grant or seek relief from such discriminatory practice. *See Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 554-55 (5th Cir. 1987).

known, that the adverse employment decision had been made.'" *Id.* (quoting *Clark*, 854 F.2d at 765).

The "time period for filing a charge is subject to equitable doctrines such as tolling or estoppel." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Courts may evaluate whether it would be proper to apply such doctrines, although they are to be applied sparingly." *Id.* at 113-14 (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam)). The Fifth Circuit has identified three possible bases for tolling under this exception: (1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of facts giving rise to the claim because of defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 880 (5th Cir. 2003); *Blumberg*, 848 F.2d at 644 (citing *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1302-03 (5th Cir. 1979)). These circumstances are not exhaustive, and tolling "may be appropriate 'in rare and exceptional circumstances when a plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting [her] rights.'" *Kirkland v. Big Lots Store, Inc.*, ___ Fed. Appx. ___, 2013 WL 6097551, at *2 n.5 (5th Cir. Nov. 21, 2013) (per curiam) (citation omitted).

B

It is undisputed that both of Cooper's Title VII claims relate to DPA's failure to pay her legal expenses in connection with her appeal of her August 2005 termination. Cooper filed her charge of discrimination, at the earliest, on December 23, 2009—more than three

years after the alleged adverse employment action.  As a result, Cooper's claims are time-barred unless they are equitably tolled.

Cooper's only argument as to equitable tolling is the following contention, without any citation to the summary judgment record: "Equitable tolling applies to Plaintiff's discovery of the non-payment of her attorney's fees in December 2009 and the discovery in May 2010 that Defendant claimed to have expelled her from membership after February 2004 but before August 30, 2005."  P. Br. 2.  She does not cite any legal authority that supports her assertion that equitable tolling applies in this case.[11]

The burden of proving equitable tolling is on Cooper.  *See Manning*, 332 F.3d at 880 ("The party who invokes equitable tolling bears the burden of demonstrating that it applies in [her] case.") (citing *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002)); *Selby*, 1998 WL 101903, at *5 (citing *Blumberg*, 848 F.2d at 644).  Even if Cooper did not discover until December 2009 that DPA failed to pay her legal expenses in 2005, she does not present any evidence that DPA intentionally concealed its failure to pay her legal expenses, or that DPA actively misled Cooper about a cause of action.  *See Manning*, 332 F.3d at 880 ("We equitably toll a limitations period only when the [defendant's] *affirmative acts* mislead the [plaintiff] and induce [her] not to act within the limitations period.").  She also fails to adduce any evidence that the EEOC misled her about the nature of her rights.

---

[11]The only case Cooper cites regarding her equitable tolling argument is *Pacheco v. Rice*, 966 F.2d 904 (5th Cir. 1992)—a case in which the panel held that the plaintiff was *not entitled* to equitable tolling.  *See id*. at 907 ("Instead, [plaintiff] sat on his rights for three years.  This was not a case for equitable tolling.").

*See id.* at 881 ("We apply equitable tolling when [the plaintiff] seeks information from the EEOC, and the organization gives the individual *incorrect information* that leads the individual to file an untimely charge.").  And although there is evidence that Cooper was involved in other litigation related to DPA, she does not make any argument that the pendency of a suit in the wrong forum justifies equitable tolling in this case.

In her response, Cooper briefly mentions that she discovered in May 2010 that she had been expelled from membership in DPA, but her complaint does not identify expulsion as a basis for her Title VII claims.  A party is not entitled to defeat summary judgment based on claims that have not been asserted as of the time the opposing party has filed a summary judgment motion.  *See, e.g., Siddiqui v. AutoZone W., Inc.*, 731 F.Supp.2d 639, 644-45 (N.D. Tex. 2010) (Fitzwater, C.J.).  And even if her complaint could be construed to allege that her expulsion constituted a discrete adverse employment action by DPA, she fails to present any evidence that would enable a reasonable jury to find that DPA intentionally concealed its decision to expel her, or that DPA actively misled her about her membership status.  *See Manning,* 332 F.3d at 880.

In sum, Cooper has not identified any reason why she was prevented from asserting her rights for a period of more than three years.  Her conclusory assertions and the evidence she has presented are insufficient to permit a reasonable jury to find that DPA intentionally concealed any of the underlying facts, or that she was misled—either by DPA or the EEOC—about her rights or cause of action.  Accordingly, the court holds that Cooper has failed to create a genuine issue of material fact as to equitable tolling and that her claims

must be dismissed as time-barred.

IV

DPA moves, in the alternative, for summary judgment on Cooper's sex discrimination claim, contending that she cannot establish a prima facie case of sex discrimination and that Cooper cannot create a genuine issue of material fact as to pretext.

A

DPA maintains that Cooper cannot establish that she was a dues-paying member of DPA at the time of her August 2005 termination, or that she was treated differently from members outside her protected class.  Cooper does not specifically respond to DPA's argument regarding her prima facie case.  Instead, she merely argues that what constitutes a prima facie case varies with the facts of each situation.  As to pretext, Cooper appears to contend that DPA's stated legitimate, nondiscriminatory reason is false or unworthy of credence.

B

Under Title VII, it is unlawful for a labor organization "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of [her]  race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(c).  Because Cooper relies on circumstantial evidence to support her discrimination claim, it is properly analyzed under the *McDonnell Douglas* burden-shifting framework.  *See, e.g., Appel v. Inspire Pharm., Inc.*, 428 Fed. Appx. 279, 281 (5th Cir. 2011) (applying *McDonnell Douglas* burden-shifting framework to Title VII discrimination claim).

- 11 -

As modified, the *McDonnell Douglas* framework consists of three stages. First, Cooper must establish a prima facie case of discrimination, which "creates a presumption that [DPA] unlawfully discriminated against [her]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of discrimination based on sex under Title VII, Cooper must show that "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 184 (5th Cir. 1999).

Second, if Cooper establishes a prima facie case, the burden shifts to DPA to articulate a legitimate, nondiscriminatory reason for the employment action taken against her. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). DPA's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).

Third, if DPA meets its production burden, Cooper must show that the legitimate reasons proffered by DPA "were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253); *see also EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). Therefore, to survive summary judgment, Cooper must "offer sufficient evidence to create a genuine issue of material fact . . . that [DPA's] reason is not true, but is instead a pretext for discrimination." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citation and internal quotation marks omitted) (describing standard in context of age

discrimination case).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253) (alteration in original).

C

The court holds that Cooper has failed to establish a prima facie case of sex discrimination. Assuming *arguendo* that Cooper can establish the first three prongs, she cannot establish the fourth prong—that she was treated differently from others similarly situated.

DPA has produced substantial, uncontroverted evidence that Cooper was not a dues-paying member of DPA when it did not pay her legal expenses in connection with the appeal of her August 2005 termination. When the ALJ ordered Cooper to be reinstated because her 2003 termination was procedurally defective, he did so on the condition that she complete a fitness-for-duty evaluation. DPA has adduced evidence that Cooper never completed a fitness-for-duty evaluation, never returned to active service in DPD, and stopped paying dues before August 2005. DPA contends that, under its governing provisions, members who stop paying dues under these circumstances cease to be members in good standing and are no longer entitled to membership benefits, such as legal assistance.

DPA's Constitution provides that DPD officers can join the organization "at any time for the appropriate initiation fee and must sign the necessary form allowing [DPD] to

withhold dues payments from their checks." D. App. 6.  Its By-Laws provide that whenever

an active member of DPA "is on official leave of absence from the police department *for any*

*cause or reason whatsoever other than military leave*, such member shall pay . . . her dues

in advance." D. App. 16 (emphasis added).  And its *Guidelines for Legal Assistance* provide:

> in order to be eligible for assistance, the member must be in
> good standing at the time of the request for legal assistance and
> any obligation of the DPA to pay for legal assistance . . . shall
> cease if, during the course of the investigation or legal action
> which is the basis for payment of legal costs, the member ceases
> to be a member in good standing for any reason, including . . .
> the member's failure to pay dues as required by the Constitution
> and By-laws of the DPA.

P. App. 45.

By her own admission, Cooper never returned to full-time employment after the ALJ's

February 2004 decision.  Consequently, she stopped drawing a paycheck from DPD, which

meant that DPD stopped withholding dues payments.  According to DPA, under the By-

Laws, because Cooper was not having her dues payments automatically deducted from a

paycheck, she needed to make payments in advance, and on her own.  But DPA has produced

evidence that the last time Cooper made a payment to DPA was in February 2005—more

than five months before her August 2005 termination.  In fact, DPA has produced evidence

that the February 2005 payment was the *only* dues payment DPA received from Cooper

between August 2004 and August 2005.  DPA maintains that, because Cooper stopped

making dues payments to DPA, her membership benefits ceased and DPA was not obligated

to pay her legal expenses when she appealed her August 2005 termination.

- 14 -

Cooper attempts to create a genuine issue of material fact in three ways. First, she responds that DPA's *Guidelines for Legal Assistance* obligate DPA to provide legal assistance to members whose employment has been terminated. But Cooper does not dispute that DPA paid for her legal expenses in connection with her first termination in 2003. And the guidelines explicitly state that DPA's obligation to provide legal assistance ceases if the member fails to pay dues as required by DPA's Constitution or By-Laws. *See* P. App. 45. In other words, DPA fulfilled its obligation under the guidelines to pay for her legal expenses in connection with the appeal of her 2003 termination—when she was a dues-paying member of the organization. But DPA had no obligation to pay her legal fees in connection with the appeal of her August 2005 termination because she had stopped making dues payments beforehand and was no longer entitled to receive membership benefits.

Second, and somewhat counterintuitively,[12] she asserts that she was not an "employee" of DPD after February 20, 2004 "because she was not reinstated to full-time employment," P. Resp. 2-3, and that "[m]embers who are not employed are not required to pay dues to [DPA]," *id.* at 4. But this argument actually reinforces DPA's position. Her first claim—that she was never reinstated to full-time employment—corroborates DPA's position that Cooper was not a dues-paying member at the time of her August 2005 termination. Indeed, both in her declaration and in her response, Cooper concedes that she was not

_____

[12]The court notes the counterintuitive nature of this argument because membership in DPA is predicated on employment with DPD. *See* D. App. 6 (DPA's Constitution provides that "[o]fficers of [DPD] may join the [DPA] . . ."). As discussed *infra* at note 14, DPD likely considered Cooper an "employee" up until close of business on August 30, 2005.

drawing a paycheck from DPD from which dues could be deducted, and that she only made one direct payment to DPA during the relevant period. And Cooper does not argue that this one-time payment was enough to satisfy her financial obligation to DPA. Her second claim—that members who are not "employees" are not required to pay dues to DPA—is not supported by competent summary judgment evidence. To support this assertion, Cooper cites to her own declaration in which she makes the same conclusory assertion, *see* P. App. 7, and to a letter from DPA to the Texas Workforce Commission ("TWC") that is taken out of context, *see id.* at 33. In the letter to the TWC, DPA acknowledges that Cooper is correct that DPA does not require dues to be paid by members whose employment has been terminated and are awaiting a civil service hearing. But DPA's letter also states the following, which Cooper does not address:

> However, once an employee's hearing is over if that employee is reinstated, the employee is required to take the necessary steps to make sure that dues are paid either by making a direct payment or filling out the proper paperwork to ensure that dues check-off with the city occurs. Mrs. Cooper did neither.

*Id.* Cooper does not dispute that DPA paid for her legal expenses in connection with the appeal of her 2003 termination, and that she was ordered conditionally reinstated by the ALJ in February 2004. She also does not dispute that she never completed the necessary steps to be reinstated to full-time employment.[13]

---

[13]Cooper objects to DPA's reliance on an affidavit from E.J. Brown ("Brown"), the records secretary for DPA and a custodian of records for the organization, on the grounds that Brown does not have personal knowledge of the facts alleged, it is conclusory, and it includes impermissible legal conclusions. The court overrules the objections. Brown avers

Third, Cooper disputes whether she was on "administrative leave" during the period between her conditional reinstatement in February 2004 and her termination in August 2005. She contends that she was not on "administrative leave," apparently in support of her contention that she was not an "employee" during the relevant time. But, as discussed above, the fact that Cooper was not "an employee" of DPD[14] and not on "administrative leave" between February 2004 and August 2005 *supports* DPA's position that she was not a dues-paying member of DPA during the relevant period and thus not entitled to membership benefits.

Viewing the evidence in the light most favorable to Cooper and drawing all reasonable inferences in her favor, she cannot establish that she was a dues-paying member of DPA at the time of her August 2005 termination. As a result, she cannot establish that she was similarly situated to dues-paying members who received payment from DPA for legal

_____

under oath that she has personal knowledge of the facts set forth in her affidavit, that she is the custodian of records for DPA, and that DPA's records show that Cooper failed to pay dues before August 2005. The affidavit is detailed and does not rely on vague or conclusory assertions. It also does not purport to offer impermissible legal conclusions.

[14]It seems clear that DPD considered Cooper an "employee" during the period between February 2004 and August 2005. The Chief of Police's August 30, 2005 termination letter states: "Pursuant to the authority vested in me as Chief of Police, by the Charter of the City of Dallas, I have discharged you from your employment as an employee of [DPD], effective close of business Tuesday, August 30, 2005." P. App. 67. But whether Cooper was considered an "employee" or on "administrative leave" is immaterial. The relevant question is whether Cooper was a dues-paying member in good standing with DPA as of August 2005. DPA has produced substantial, uncontroverted evidence that she was not. And under DPA's governing provisions—its Constitution, By-Laws, and *Guidelines for Legal Assistance*—this means that Cooper was not entitled to membership benefits.

expenses.   She has also failed to present any evidence that other "non-dues-paying members"—if such a category is cognizable—received payment for legal expenses.  Because Cooper cannot establish that others similarly situated were treated differently, she cannot make out a prima facie case of sex discrimination.  *See, e.g., Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941-42 (5th Cir. 2005) (per curiam) (affirming summary judgment for defendant where plaintiff failed to establish prima facie case of discrimination due to failure to demonstrate that others similarly situated were treated differently).   As a result, she has failed to create a genuine issue of material fact as to an essential element of her claim.  Thus the court holds that DPA is entitled to summary judgment on this alternative basis.

D

Based on the court's analysis below, the court holds that, assuming *arguendo* that Cooper's sex discrimination claim is not time-barred and that she is able to establish a prima facie case of sex discrimination, she has failed to create a genuine issue of material fact regarding pretext.  Consequently, DPA is also entitled to summary judgment on Cooper's sex discrimination claim based on her failure to satisfy the third step of the *McDonnell Douglas* framework.

V

The court now turns to Cooper's retaliation claim.

A

DPA moves for summary judgment on Cooper's retaliation claim on the alternative ground that she cannot establish a prima facie case because she cannot demonstrate a causal

link between her protected activity and DPA's failure to pay her legal expenses in August 2005, and, even if she could, she cannot raise a genuine issue of material fact that DPA's proffered legitimate, nondiscriminatory reason is pretextual.  Cooper responds that she can establish a causal link because it can be inferred from DPA's inconsistent explanations about her membership status and from the temporal proximity of the events in question.  As to pretext, Cooper apparently relies on the same arguments, and, in addition, contends that there is no evidence to support DPA's stated legitimate, nondiscriminatory reason for its failure to pay her legal expenses.

B

Because Cooper relies on circumstantial evidence, it is proper to analyze her retaliation claim under the *McDonnell Douglas* burden-shifting framework.  *See, e.g., Tesso v. Westwood Coll.*, 2012 WL 3204916, at *8 (N.D. Tex. Aug. 8, 2012) (Fitzwater, C.J.).  She must demonstrate a prima facie case for retaliation by showing that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment action.  *See, e.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir.1996)).  As to the third element, the requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but for" causation that a jury must find.  *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850,

at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing prima facie burden as "minimal").

If Cooper establishes a prima facie case, the burden shifts to DPA to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken.  This burden is one of production, not of proof.  *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If DPA meets its production burden, Cooper must adduce evidence that would permit a reasonable trier of fact to find that the adverse employment action would not have occurred but for the protected conduct.  *See Walker*, 2005 WL 2278080, at *9.  "After the [defendant] has produced evidence to rebut the [plaintiff's] prima facie case of retaliation, the showing that the plaintiff must make to establish causation is more onerous than that initially required to present a prima facie case."  *Phillips v. Credit Lyonnais*, 2002 WL 1575412, at *8 n.4 (N.D. Tex. July 16, 2002) (Fish, C.J.) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir.1998); *Long*, 88 F.3d at 305 n.4).  "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision."  *Long*, 88 F.3d at 305 n.4.

## C

Assuming *arguendo* that Cooper can establish a prima facie case of retaliation, the court holds that Cooper has failed to create a genuine issue of material fact that DPA's proffered legitimate, nondiscriminatory reason for failing to pay her legal expenses in connection with the appeal of her August 2005 termination is pretextual.

1

As discussed above, DPA's stated reason for not paying Cooper's legal expenses in connection with the appeal of her 2005 termination is that Cooper was not a dues-paying member as of August 2005 and thus not entitled to receive membership benefits, such as legal assistance.  DPA has carried its burden of production, producing considerable evidence in support of this legitimate, nondiscriminatory reason.

2

Under the *McDonnell Douglas* burden-shifting framework, because DPA has produced evidence of a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to Cooper to show "by a preponderance of the evidence that the reasoning presented by the defendant is a pretext for retaliation." *Smith v. Sw. Bell Tel. Co.*, 456 Fed. Appx. 489, 492 (5th Cir. 2012) (per curiam) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 584 (5th Cir. 2006)) (internal quotation marks omitted).  Cooper "may prove pretext 'either through evidence of disparate treatment or by showing that the [defendant's] proffered explanation is false or unworthy of credence.'" *Id.* (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).  At the summary judgment stage, Cooper's burden is to raise a genuine issue of material fact regarding pretext. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *6 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.).

Cooper relies on the theory that DPA's proffered explanation is false or unworthy of credence.  "To defeat a motion for summary judgment, a Title VII plaintiff, like [Cooper]

must show there is a conflict in substantial evidence on this ultimate issue." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 368-69 (5th Cir. 2013) (citing *Long*, 88 F.3d at 308). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions." *Id.* (citing *Long*, 88 F.3d at 308).

Cooper has failed to produce any evidence from which a reasonable trier of fact could find that DPA's proffered legitimate, nondiscriminatory reason for failing to pay her legal expenses is pretextual. In her declaration, she concedes that she did not return to full-time employment with DPD after her February 2004 conditional reinstatement, and that she "did not receive a paycheck from which [DPA] dues could be withdrawn." P. App. 7. She does not dispute that she only made one dues payment to DPA between August 2004 and August 2005. And she does not argue that this one-time payment was enough to satisfy her financial obligation to DPA. In the face of these uncontroverted facts, all of which support DPA's stated legitimate, nondiscriminatory reason, Cooper attempts to create a genuine issue of material fact regarding pretext in three ways.

First, Cooper argues that pretext can be inferred from DPA's inconsistent explanations about her membership status. She presents an unsigned letter from DPA to an EEOC investigator, dated July 22, 2005, which states that "Cooper is currently a member and is believed to have been a member in good standing during the period relevant to this complaint." P. App. 66. In its reply, DPA objects to this letter on the ground that it is hearsay, unauthenticated, and cannot be established as a business record under Fed. R. Evid.

803.  The court overrules these objections as moot because, even if the letter is considered,

it does not create a genuine issue of material fact as to pretext.  As DPA points out, the letter

appears to relate to Cooper's *prior* request for legal funding—when she requested that DPA

pay her $5,000 in connection with a lawsuit against DPD.  *See id.*  According to DPA, the

letter's language of "period relevant to this complaint" refers to events in 2004, not August

2005.[15]  *Cf. Cooper v. Dall. Police Ass'n*, No. 3:05-2206-N, Order at 2 ("In 2004, Cooper

requested additional funding for a civil suit she had filed against [DPD].").  The fact that she

was a member in good standing when she made the 2004 funding request does not establish

that she was a member in good standing when she appealed her August 2005 termination.

And the fact that the letter is dated July 22, 2005—more than a month before her August 30,

2005 termination—strongly supports DPA's interpretation.  The letter does state that Cooper

is "currently a member," but DPA contends that this was merely an error in an incomplete,

unsigned draft.  Even taking the letter as an accurate reflection of her membership status at

the time it was written, the letter at best indicates that Cooper was a member in July 2005.

It does not establish that she was a dues-paying member in August 2005.  Accordingly, to

the extent there are any inconsistencies in the explanations offered by DPA, they are

insufficient to raise a genuine issue of material fact because there is no evidence that would

---

[15]In her surreply, Cooper argues that the 2004 funding request was not related to her
2003 termination.  She contends that the request related to a "workers' compensation
appeal."  *See* P. Surreply 2.  Regardless whether the request related to her first termination
or a "workers' compensation appeal," it is undisputed that the funding request occurred in
2004 and that it did *not* relate to DPA's failure to pay Cooper's legal expenses in connection
with the appeal of her August 2005 termination.

enable a reasonable trier of fact to find that Cooper was a dues-paying member in August 2005.

Second, Cooper contends that the temporal proximity between DPA's August 2004 discovery that Cooper may have discoverable information in a discrimination case brought by a different plaintiff, or the filing of her own lawsuit against DPA related to the 2004 funding request, and DPA's failure to pay her legal fees in connection with the appeal of her 2005 termination is evidence of pretext.  But this evidence does not rebut DPA's proffered legitimate, nondiscriminatory reason for failing to pay her legal expenses in connection with the appeal of her August 2005 termination.  DPA acknowledges that Cooper was a dues-paying member when she made the 2004 funding request (the same year in which DPA learned that Cooper may have discoverable information in the other lawsuit), but it maintains that, by the time Cooper was terminated in August 2005, she was no longer a dues-paying member.  Cooper does not dispute that she only made one payment to DPA between August 2004 and August 2005, and she does not argue that this one-time payment was enough to satisfy her financial obligations to DPA.  Thus the temporal proximity of the events in question would not enable a reasonable trier of fact to find that DPA's proffered legitimate, nondiscriminatory reason is pretextual.

Third, Cooper asserts in conclusory fashion that DPA has not produced sufficient evidence to support its proffered legitimate, nondiscriminatory reason for its failure to pay her legal expenses.  But, as previously discussed, Cooper has simply failed to produce sufficient evidence for a reasonable trier of fact to find that DPA's legitimate,

- 24 -

nondiscriminatory reason is pretextual.

Because Cooper has failed to produce any evidence from which a reasonable trier of fact could find that DPA's proffered legitimate, nondiscriminatory reason for failing to pay her legal expenses in connection with the appeal of her August 2005 termination is pretextual, the court holds that DPA is entitled to summary judgment dismissing her retaliation claim on this alternative ground.

*   *   *

For the reasons explained, defendant's motion for summary judgment is granted, and this action is dismissed with prejudice by judgment filed today.[16]

**SO ORDERED.**

March 21, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[16]Because the court is granting DPA's motion for summary judgment, it denies as moot DPA's October 10, 2013 motion for sanctions and Cooper's November 4, 2013 motion to strike DPA's motion for sanctions. This court previously referred both motions to the magistrate judge, but he has not yet rendered a decision as to either motion.

After the motions had been referred, the magistrate judge scheduled a hearing for January 6, 2014 to hear argument on the motions. Cooper failed to attend the hearing, and the magistrate judge took the matter under advisement. Cooper subsequently filed two motions that relate to the motion for sanctions and her failure to attend the hearing. The court denies as moot Cooper's January 10, 2014 motion for leave, to reopen, and to continue and her January 30, 2014 motion for leave to file evidence.

- 25 -